**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROUND VALLEY INDIAN TRIBES OF CALIFORNIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, et al.,<br><br>Defendants. | Case No. 15-cv-04987-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 68 |

Now before the Court for consideration is the motion to dismiss filed by the United States Department of Transportation, Secretary of Transportation Anthony Foxx, the Federal Highway Administration ("FHWA"), and FHWA Administrator Gregory G. Nadeau (collectively the "Federal Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it has had the benefit of oral argument. For the reasons set forth herein, the Court HEREBY GRANTS, IN PART, AND DENIES, IN PART, the Federal Defendants' motion.

**BACKGROUND**

**A.   Factual Background.**

This litigation arises out of a highway project that is under construction around the community of Willits, California (the "Willits Bypass Project"). Plaintiffs, the Coyote Valley Band of Pomo Indians of California ("Coyote Valley") and the Round Valley Indian Tribes of California ("Round Valley") (collectively "Plaintiffs"), allege the Federal Defendants violated the

1

National Environmental Protection Act ("NEPA"), Section 4(f) of the Department of Transportation Act, 49 U.S.C. section 303(c) ("Section 4(f)"), Section 18(a) of the Federal-Aid Highway Act, 23 U.S.C. section 138 ("Section 18(a)"), and the National Historic Preservation Act ("NHPA").

On July 1, 2007, the FHWA entered into a Memorandum of Understanding ("MOU") with defendant California Department of Transportation ("Caltrans"), in which the FHWA assigned certain responsibilities and liabilities for various projects, including the Willits Bypass Project, to Caltrans, pursuant to the Surface Transportation Project Pilot Delivery Program (the "Pilot Program"), 23 U.S.C. section 327.  (*See* First Amended Complaint ("FAC") ¶¶ 15, 66, 97; Dkt. No. 32-1, Declaration of David B. Glazer ("Glazer Decl."), Ex. A (MOU), §§ 1.1.1, 3.1.1.)[1]  The parties agreed the FHWA would assign and Caltrans would assume "all of the USDOT Secretary's responsibilities for environmental review, consultation, or other such action pertaining to the review or approval of a specific project as required under" other specific federal environmental laws including, Section 4(f), Section 18(a), and the NHPA.  (MOU §§ 3.2.1.I, 3.2.1.Y; *see also* FAC ¶¶ 15, 206-207.)  However, Caltrans did not assume the Federal Defendants' responsibilities for government-to-government consultation under the NHPA.  (*See* MOU § 3.2.3.)

Plaintiffs allege all Defendants, including the Federal Defendants: (1) failed to properly identify and protect the Plaintiffs' "ancestral, sacred, cultural, and archeological sites and resources;" and (2) destroyed certain sites during the construction of the Willits Bypass Project. (*See, e.g,* FAC ¶¶ 1, 45-46, 211.)  Plaintiffs also allege all Defendants, including the Federal Defendants, failed to "(a) adequately address the direct, indirect, and cumulative cultural, environmental, and historic impacts of the Willits Bypass Project; (b) identify and finalize the details of the mitigation plan or its environmental and cultural impacts; and (c) commit to necessary mitigation measures."  (*Id.* ¶ 8.)

According to Plaintiffs, "the Federal Defendants failed to retain their duty to consult" with them under the NHPA "until at least 2013, when consultation commenced, and from that point,

---

[1]   The parties listed 22 projects for which Caltrans did not assume responsibility or liability. The Willits Bypass Project is not included among those projects.  (MOU § 3.3.1.)

the Federal Defendants failed to properly consult with Plaintiffs." (FAC ¶ 184.) For example, Plaintiffs allege in 2005 the Federal Defendants concluded a Section 106 review and issued a finding of "conditional No Adverse Effect to historic properties." (*Id.* ¶ 17.) Plaintiffs contend the Federal Defendants issued that finding without any government-to-government consultation with Plaintiffs. (*Id.*) Plaintiffs also allege in 2006 Caltrans identified only one archaeological site eligible for registry on the National Register of Historic Places ("NRHP"). (*Id.*) According to Plaintiffs, since 2013 Caltrans has identified an additional thirty (30) archeological sites that are eligible for registry on the NRHP. Plaintiffs further allege the California State Office of Historic Preservation has indicated the entire area of the Willits Bypass Project might have to be designated as an archeological district of ancestral sites. (*Id.* ¶ 19; *see also* ¶¶ 21-43.)

Plaintiffs allege that, following a government-to-government consultation in 2015, they asked the FHWA to require that Caltrans prepare a supplemental EIS and asked the FHWA to reassume regulatory jurisdiction over the Willits Bypass Project. (*Id.* ¶ 200.) Plaintiffs also allege that, during this meeting, they asked the FHWA to follow a "protocol similar to that outlined in [a] 2005 Memorandum of Understanding between Caltrans" and another Pomo Indian tribe and raised the failure of the Federal Defendants to "provide [Coyote Valley] with information regarding activities impacting archaeological sites and Caltrans' ongoing destruction of sites." (*Id.* ¶¶ 201, 201.1, 201.3.) Round Valley also raised issues relating to the fact that it was not an "invited signatory party" to a programmatic agreement entered into in 2014.[2] (*Id.* ¶ 201.5.) According to Plaintiffs they also raised concerns that the Mendocino County Resource Preservation District had insufficient experience and expertise to adequately protect Plaintiffs' archeological and cultural sites in the Willits Bypass Project area. (*Id.* ¶ 201.6.)

Plaintiffs allege they followed up on these issues in a letter dated March 17, 2015, and continued to: complain about the "treatment of Native American cultural resources impacted by

---

[2] That Programmatic Agreement is entitled "First Amended Programmatic Agreement Among the Federal Highway Administration, the Advisory Council on Historic Preservation, the California State Historic Preservation Officer, and the California Department of Transportation Regarding Compliance with Section 106 of the National Historic Preservation Act, as it Pertains to the Administration of the Federal-Aid Highway Program in California." (*See* FAC ¶ 182; Glazer Decl., Ex. C ("Programmatic Agreement").)

3

1  the Willits Bypass Project," including the destruction and inadequate protection of sites discovered
2  after construction began; request preparation of a Supplemental EIS; and request the FHWA
3  reassume responsibilities for the Willits Bypass Project. (*See id.* ¶¶ 202-203.)

Plaintiffs also allege the Federal Defendants "have failed to reassume any part of their responsibilities for processing the Willits Bypass Project in terms of good faith government-to-government consultation," including taking steps to protect properties of importance to Plaintiffs that may be eligible for inclusion on the NRHP and failing to provide Plaintiffs with "a reasonable opportunity to identify … concerns about historic properties, advise on the identification and evaluation of historic properties …, articulate … views on the" Willits Bypass Project's effects on those properties and participate in the resolution of adverse effects. (*Id.* ¶ 207.)

The Court shall address additional facts as necessary in the analysis.

**B.  Procedural History.**

On October 30, 2015, Plaintiffs filed the original complaint in this case. (Dkt. No. 1.) On August 2, 2016, the Court granted the Federal Defendants' motion to dismiss. (Dkt. 58, Order Granting Federal Defendants' Motion to Dismiss ("August 2 Order").) The Court concluded that the terms of the MOU would bar Plaintiffs' claims under NEPA and Section 4(f) and Section 18(a). It also found Plaintiffs had not alleged sufficient facts to make Section 3.2.3 of the MOU relevant. (*Id.* at 6:4-24.) The Court also concluded that Plaintiffs' claims under the NHPA "appear to be based on conduct that would fall within the scope of the responsibilities that Caltrans has assumed under the MOU." (*Id.* at 7:12-8:10.) The Court gave Plaintiffs leave to amend, and it directed Plaintiffs to specifically identify which Defendant acted, or failed to act, in a particular manner. (*Id.* at 7:1-10, 8:11-16.)

On August 24, 2016, Plaintiffs filed the FAC.[3]

//

---

[3]  The Court ordered Plaintiffs to file their FAC by August 23, 2016. Plaintiffs initially filed the FAC on August 24, 2016. Because Plaintiffs used an incorrect case number, they were required to re-file the FAC. Plaintiffs filed the corrected FAC on August 26, 2016. The Federal Defendants have not demonstrated any prejudice as a result of that delay. Accordingly, the Court accepts the FAC.

# ANALYSIS

**A.     Applicable Legal Standards.**

The Federal Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss under Rule 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where a defendant makes a facial attack on jurisdiction, a court takes the factual allegations of the complaint as true. *Federation of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal citation and quotations omitted). The plaintiff is then entitled to have those facts construed in the light most favorable to him or her. *Federation of African Am. Contractors*, 96 F.3d at 1207.

Where a defendant makes a factual attack on jurisdiction, the moving party questions the veracity of the plaintiff's allegations that "would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. The plaintiff's allegations are questioned by "introducing evidence outside the pleadings." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "[T]he plaintiff must support … jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Id.* (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010)). While the plaintiff typically has the burden of proof to establish subject matter jurisdiction, "if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Id.* at 1121-22 (citing *Safe Air for Everyone*, 373 F.3d at 1039-40).

Under Rule 12(b)(6), a court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the

5

elements of a claim for relief will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not allege conduct that is conceivable but must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, a court may consider documents attached to the complaint, documents relied upon but not attached to the complaint, when the authenticity of those documents is not questioned, and other matters of which a court can take judicial notice, without converting a motion to dismiss into a motion for summary judgment. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990). Where a plaintiff has previously amended a complaint, "a district court's discretion to deny leave to amend is particularly broad[.]" *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

**B.   The Court Grants, in Part, and Denies, in Part, the Motion to Dismiss.**

   **1.   Rule 8 and Rule 41.**

The Federal Defendants move to dismiss, in part, on the basis that Plaintiffs failed to comply with the terms of the August 2 Order. They argue that, as a result, dismissal is appropriate under Federal Rules of Civil Procedure 8 and 41. For the reasons set forth in the Order denying the Caltrans Defendants' motion to dismiss on that basis, the Court DENIES, IN PART, the Federal Defendants' motion to dismiss. (*See* Dkt. No. 84.)

### 2. The MOU and the Pilot Program.

The Federal Defendants also argue that the terms of the Pilot Program and the MOU bar Plaintiffs' claims, because Caltrans, with the exception of government-to-government consultation, has assumed responsibility for and liability for any claims under NEPA, Section 4(f), Section 18(a), and the NHPA.

At the hearing on this motion, Plaintiffs clarified their theories of liability on their environmental claims. Plaintiffs argue that, setting aside Section 3.2.3 of the MOU, the Federal Defendants directly violated each of the statutes at issue. Plaintiffs also continue to rely on Section 3.2.3 to support their claims. Under this latter theory, Plaintiffs allege and argue that they raised "project related concern[s and issues] in a government-to-government consultation process," which were related to NEPA and other "federal environmental laws for which Caltrans" assumed responsibilities under the MOU. Plaintiffs also allege and argue they determined Caltrans would not resolve those concerns satisfactorily. Thus, according to Plaintiffs, the Federal Defendants are liable for the environmental claims based on a failure to act or for any actions they did take after that government-to-government consultation.

According to the Federal Defendants, Plaintiffs still do not allege facts to show alleged violations of the obligation to engage in government-to-government consultation, and they argue that all of Plaintiffs' allegations still relate to the manner in which Caltrans has implemented the Willits Bypass Project. To the extent Plaintiffs argue that the Federal Defendants should be held liable for direct violations of those statutes prior to any consultation process that may have triggered the provisions Section 3.2.3, the Court finds that theory of liability untenable.

Under the Pilot Program, the Secretary of Transportation "may assign, and [a state] may assume, the responsibilities of the Secretary with respect to one or more highway projects within" that state under NEPA. 23 U.S.C. § 327(a)(2)(A). The Pilot Program also provides that, if a state assumes responsibility for a project under Section 327(a)(2)(A), "the Secretary may assign to the State, and the State may assume, all or part of the responsibilities of the Secretary for environmental review, consultation, or other action required under any Federal environmental law pertaining to the review or approval of a specific project." *Id.* § 327(a)(2)(B)(i). If a state

7

assumes "responsibility under subsection (a)(2) [it] *shall be solely responsible and solely liable* for carrying out, in lieu of the Secretary, the responsibilities assumed under subsection (a)(2), until the program is terminated as provided in subsection (i)." *Id.* § 327(e) (emphasis added). "Any responsibility of the Secretary not explicitly assumed by the State by written agreement under this section shall remain the responsibility of the Secretary." *Id.* § 327(a)(2)(D).

The MOU, in turn, provides that "Caltrans shall *be solely liable and solely responsible* for carrying out all of the USDOT Secretary's responsibilities it has assumed under part 3 of this MOU subject to the limitations of the Eleventh Amendment waiver acknowledged in section 4.3.1 of this MOU. The FHWA and USDOT *shall have no responsibility or liability for the performance of the responsibilities assumed by Caltrans*, including any decision or approval made by Caltrans while participating in the Pilot Program." (MOU § 6.1 (emphasis added).)

In their NEPA claim, Plaintiffs incorporate by reference all earlier allegations and allege the Federal Defendants are "required to prepare a supplement to their Final EIS/EIR." (FAC ¶¶ 208, 210, 213.) Plaintiffs also allege the Federal Defendants "failed to implement any necessary cultural resource protection and archeological mitigation measures to effectively address and mitigate harm to the extensive historical and cultural resources which are now being adversely impacted by the Project activities." (*Id.* ¶ 211.) Finally, Plaintiffs allege the Federal Defendants violated NEPA by "not properly performing an evaluation of Plaintiffs' ancestral and archeological sites in the construction of the Willits Bypass Project, and otherwise deferring resolution of important environmental impact issues until long after the NEPA process was complete[.]" (*Id.* ¶ 212.) These allegations relate to the manner in which the Willits Bypass Project is being or has been implemented, actions for which Caltrans assumed responsibility under the MOU.

In their Section 4(f) and Section 18(a) claim, Plaintiffs incorporate by reference all earlier allegations and allege the Federal Defendants violated these statutes by "failing to adequately minimize the Willits Bypass [Project's] adverse impacts on Plaintiffs' ancestral and archeological sites and by failing to properly act on the increasingly obvious knowledge that cultural sites were being discovered in substantial numbers with potentially significant impacts to protected cultural

resources." Plaintiffs also allege the Federal Defendants violated those statutes "by failing to disclose the cumulative impacts of the MMP on Plaintiffs' ancestral and archeological sites and by failing to hold a 'public hearing' in the manner required by" the statutes. (*Id.* ¶¶ 214-216.) As with the NEPA claim, those allegations are based on conduct that relates to the implementation of the Willits Bypass Project; conduct that falls within the scope of the responsibilities that Caltrans assumed under the MOU.

In the NHPA claim, Plaintiffs incorporate by reference all previous allegations. (FAC ¶ 217.) They allege the Federal Defendants failed to comply with Section 106 of the NHPA in eleven different ways, allegations that remain unchanged from Plaintiffs' original complaint. (*Compare* FAC ¶¶ 219.a-219.k *with* Compl. ¶¶ 183.a-183.k.) At least some of those allegations relate to conduct for which Caltrans assumed responsibility under the MOU.

However, Plaintiffs also allege they engaged in government-to-government consultations with "Defendants" at various points between June 2013 and February 18, 2015. (*See* FAC ¶¶ 44, 109, 169-170, 185-186.) Plaintiffs' requests in June 2013 were directed to Caltrans, and Plaintiffs were advised that if they wanted to request "formal government-to-government consultation," they should "contact Vincent Mammano, Division Administrator, at the [FHWA]-California Division." (*Id.* ¶ 187.) Based on the allegations in the FAC, the Plaintiffs did not engage in a government-to-government consultation with the Federal Defendants until at least late April 2014. Plaintiffs also refer to a specific meeting that occurred on February 18, 2015. (*Id.* ¶¶ 188-190 & Ex. 5.)

Plaintiffs allege they raised issues relating to the protection of archeological sites and cultural resources and asked the FHWA to "reassume regulatory jurisdiction over the Willits Bypass Project," at the meeting on February 18, 2015. (FAC ¶¶ 200-203.) According to Plaintiffs, the Federal Defendants never responded to that request. (*Id.* ¶ 204; *see also id.* ¶ 207 ("[T]he Federal Defendants have failed to reassume any part of their responsibilities for processing the Willits Bypass Project in terms of good faith government-to-government consultation[.]"). There are no allegations that Plaintiffs asked the Federal Defendants to reassume environmental responsibilities for all or part of the Willits Bypass Project prior to February 18, 2015.

The Court concludes that to the extent Plaintiffs seek to hold the Federal Defendants directly liable for violations of NEPA, Section 4(f), Section 18(a), and non-consultation related violations of the NHPA prior February 18, 2015, any such claims would be barred on the basis of the terms of the MOU and the Pilot Program.

The Court now turns to the impact of Section 3.2.3 of the MOU, which provides, in relevant part:

> [i]f a project-related concern or issue is raised in a government-to-government consultation process with an Indian tribe, as defined in 36 CFR 800.16(m), and is related to NEPA or another federal environmental law for which Caltrans has assumed responsibilities under this MOU, *and either* the Indian tribe or the FHWA determines that the issue or concern will not be satisfactorily resolved by Caltrans, then the FHWA *shall* reassume all or part of the responsibilities for processing the project. In this case, the provisions of section 9.1 concerning FHWA initiated reassumptions shall apply.

(*Id.* § 3.2.3 (emphasis added).)[4]

The Court previously found the Plaintiffs neither alleged they determined that the issues and concerns they described would not be resolved by Caltrans in a satisfactory manner nor alleged why that was so. In addition, they did not allege the Federal Defendants failed to reassume all or part of the responsibilities for the Willits Bypass Project. Plaintiffs now include such allegations. For example, in addition to the request made at the meeting in February 2015, Plaintiffs allege in March 2015 they sent a letter that raised additional issues with the Federal Defendants regarding the manner in which Native American cultural resources had been impacted. Plaintiffs also allege that, in that letter, they asked the Federal Defendants to reassume responsibility for environmental review of the Willits Bypass Project. (*See generally id.* ¶¶ 202-203.) The Federal Defendants argue Plaintiffs allege they asked the Federal Defendants to

---

[4] The Federal Defendants also moved to dismiss based on the terms of the MOU and the Pilot Program in the related case, *Center for Biological Diversity, et al. v. Federal Highway Administration, et al.*, No. 12-cv-02172-JSW. Because the plaintiffs were not federally recognized Indian tribes, Section 3.2.3 was not relevant to that case, and the Court granted the Federal Defendants' motion to dismiss with prejudice. *See Center for Biological Diversity*, No. 12-cv-02172-JSW, Dkt. No. 58.

10

reassume responsibility pursuant to Article IV, Section E(3) of the Programmatic Agreement, rather than Section 3.2.3 of the MOU. (*Id.* ¶¶ 202.3, 203.c.)[5] Although that is true, Plaintiffs do invoke Section 3.2.3 of the MOU in paragraph 207 of the FAC.

The Federal Defendants argue that, notwithstanding those allegations, Plaintiffs have no right to enforce or to invoke the protections set forth in Section 3.2.3, because they are not third-party beneficiaries of the MOU.[6] "Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999) ("*Klamath*"); *accord Orff v. United States*, 348 F.3d 1137, 1145 (9th Cir. 2004). The *Klamath* and *Orff* cases, on which the Federal Defendants rely to support this argument, involved claims for breach of contract, a theory of recovery not at issue here.

Rather, Plaintiffs argue that the Court can and should consider the provisions of Section 3.2.3 in order to determine whether the Federal Defendants subsequently violated the environmental statutes at issue here and whether the Federal Defendants' conduct amounts to action "unlawfully withheld or unreasonably delayed" or action that is otherwise "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. §§ 706(1), 706(2)(A). Therefore, at the pleadings stage, the Court finds the Federal Defendants' reliance on *Klamath* and *Orff* inapposite. The Court concludes Plaintiffs have stated claims against the Federal Defendants under NEPA, Section 4(f), Section 18(a), and the NHPA to the extent those claims are premised on the Federal Defendants' action, or inaction, occurring after February 18, 2015.

The Federal Defendants also argued that Plaintiffs failed to ask the Court to order the Federal Defendants to reassume responsibility for the Willits Bypass Project. The Federal Defendants argue that failure prevents Plaintiffs from establishing they have Article III standing to

---

[5] Unlike Section 3.2.3 of the MOU, Section E(3) states that the Federal Defendants "may" reassume all or part of the federal responsibilities for environmental review. (Programmatic Agreement Art. IV, § E(3).)

[6] It is undisputed that Plaintiffs are not signatories to the MOU.

11

1  pursue their claims, because they have not asked for relief that would redress the alleged injuries.
2  Plaintiffs have not, in fact, asked the Court to direct the Federal Defendants to reassume
3  responsibility for the Willits Bypass Project. If Plaintiffs seek such relief and in good faith believe
4  it is relief the Court can grant them, they may file an amended complaint to include that request in
5  their Prayer for Relief. However, the Court also finds that, at the pleadings phase, Plaintiffs have
6  alleged facts to show that a ruling in their favor would redress the injuries alleged. Therefore, the
7  Court concludes Plaintiffs allege facts to show they have standing.

8  Accordingly, the Court DENIES, IN PART, the Federal Defendants' motion to dismiss.

### 3.   The NHPA Consultation Claims May Proceed.

The Federal Defendants argue Plaintiffs' allegations are not sufficient to state a claim for failing to engage in government-to-government consultation. According to the Federal Defendants, they may satisfy their obligations under the NHPA by the preparation of a programmatic agreement. They also argue that the Programmatic Agreement entered into in 2014 is sufficient. The Programmatic Agreement to which the Federal Defendants refer does "cover" the Willits Bypass Project, but it is not specific to the Willits Bypass Project. The Court is unwilling to conclude on a motion to dismiss that Plaintiffs cannot state a claim simply because that Programmatic Agreement exists.[7]

Plaintiffs set forth facts that describe the alleged failure to engage in the consultation process. (FAC ¶¶ 182-207.) Plaintiffs also allege that these facts show the Federal Defendants "improperly addressed the mandate to comply with Section 106 of the NHPA" at three stages: (1) at the Final EIS/EIR stage[8]; (2) when construction commenced; and (3) when the Federal

---

[7]  The Federal Defendants rely on *Te-Moak Tribe of W. Shoshone of Nevada v. U.S. Dep't of Interior*, 608 F.3d 592 (9th Cir. 2010), *Grand Canyon Trust v. Williams*, 98 F. Supp. 3d 1044 (D. Ariz. 2015), and *Quechan Indian Tribe of the Fort Yuma Indian Reservation v. U.S. Dep't of Interior*, 547 F. Supp. 2d 1033 (D. Ariz. 2008) to support their motion. However, each of those cases resolved claims under the NHPA on motions for summary judgment rather than motions to dismiss.

[8]  Plaintiffs do not address the Federal Defendants' argument that any claims relating to approval of the Final EIS, issued in 2006, would be time barred. *See, e.g.,* 28 U.S.C. § 2401(a) ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues[.]"). Although Plaintiffs do allege the Federal Defendants failed to comply with the NHPA at the time the Final EIS was approved, the

Defendants failed to correct these errors once additional archeological sites were discovered.[9]  (*Id.* ¶ 91; *see also id.* ¶ 219.)[10]

The Court concludes Plaintiffs have alleged facts sufficient to state a claim under the NHPA, and it DENIES, IN PART, the Federal Defendants' motion to dismiss.

## CONCLUSION

In sum, the Court concludes Plaintiffs have alleged facts to state a claim based on alleged failure to engage in a government-to-government consultation process under NHPA.  To the extent Plaintiffs' NEPA, Section 4(f), Section 18(a), and NHPA claims relate to the manner in which the Willits Bypass Project has been implemented, claims based on actions, or inaction, prior to February 18, 2015, would be barred by the terms of the Pilot Program and the MOU.  However, Plaintiffs have stated claims against the Federal Defendants based on action or inaction that occurred after that date.

//

//

//

//

---

remaining allegations in the FAC focus on what has occurred since construction began on the Willits Bypass Project.  The Court orders the parties to meet and confer on this issue.  If, in fact, Plaintiffs premise *any* of their claims on actions taken prior to approval of the Final EIS, including an alleged failure to engage in government-to-government consultation, the Federal Defendants may renew this argument in a motion for summary judgment.

[9]  Plaintiffs also allege that "'Defendants have failed to prepare or implement a Post-Review Discovery and Monitoring Plan ("PRDMP")."  (FAC ¶ 100; *see also id.* ¶ 219.b.)  Although that may have been true when they filed the original complaint, the Federal Defendants submitted a PRDMP dated December 1, 2015, with their original motion to dismiss.  (Glazer Decl., Ex. C.)  It is unclear to the Court whether Plaintiffs challenge the sufficiency of that document.  The parties also shall meet and confer on that issue, and shall set forth their positions in the joint case management conference statement due on March 17, 2017.

[10]  The Court does note that Plaintiffs' allegations regarding government-to-government consultation are not entirely consistent.  For example, Plaintiffs allege that the Federal Defendants "have not properly engaged in government-to-government consultation," with them on "post-review discoveries, the unanticipated inadvertent effects, and the potential adverse effect on the subject historic properties."  (FAC ¶ 43; *see also id.* ¶¶ 60-61.)  Yet Plaintiffs also include allegations suggesting government-to-government consultations did occur, albeit with Caltrans or with agencies that are not parties to this lawsuit.  (*See, e.g., id.* ¶¶ 114-115, 123-124, 192, 194-199.)

1    Accordingly, for the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN
2 PART the Federal Defendants' motion to dismiss.
3    **IT IS SO ORDERED.**
4 Dated: March 10, 2017

_____
JEFFREY S. WHITE
United States District Judge