**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COYOTE VALLEY BAND OF POMO
INDIANS OF CALIFORNIA, *et al.*,

        Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, *et al.*,

        Defendants.

Case No. 15-cv-04987-JSW

**ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
AND GRANTING, IN PART, AND
DENYING, IN PART, CALTRANS
DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 132, 138

      Now before the Court is the motion for summary judgment filed by Plaintiffs, Coyote

Valley Band of Pomo Indians of California ("Coyote Valley") and The Round Valley Indian

Tribes of California ("Round Valley") (collectively "Plaintiffs").[1]  Also before the Court is the

cross-motion for summary judgment filed by the California Department of Transportation

("Caltrans") and Caltrans's Director, Malcolm Dougherty, (collectively the "Caltrans

Defendants").  The Court has considered the parties' papers, relevant legal authority, the record in

this case, and the parties' arguments at the hearing on the motions.

      The Court HEREBY DENIES Plaintiffs' motion, and it GRANTS, IN PART, AND

DENIES, IN PART, the Caltrans Defendants' motion.

//

//

---

[1]    All parties effectively treat the Plaintiffs as a unit, although they are separate tribes.  The
Court has made every effort to distinguish between the Plaintiffs as it has evaluated their motion
to determine whether they have met their respective burdens to show they are entitled to relief.

# BACKGROUND

## A.      Factual Background.

This litigation arises out of the construction of 5.9-mile-long segment of U.S. Highway 101, which bypasses the City of Willits, California (the "Willits Bypass Project"), and post-construction mitigation projects in the area.  (*See, e.g.*, Caltrans Defendants' Administrative Record ("CT AR"), 000015-16, 000038-39; Caltrans Defendants' Supplemental Administrative Record ("CT Supp. AR") 001036-40.)[2]  It is the second time this Court has considered an environmental challenge to the Willits Bypass Project.  *See, e.g., Ctr. for Biol. Diversity v. Cal. Dep't of Transp.*, No. 15-cv-2172-JSW, 2013 WL 6698740 (N.D. Cal. Dec. 19, 2013).

It is undisputed that the FHWA and Caltrans issued a final Environmental Impact Statement ("EIS") for the Willits Bypass Project in October 2006.  In December 2006, the agencies issued a Record of Decision, which approved a variation of a four-lane freeway ("Modified Alternative J1T").  (CT AR 000001-1928 (Final EIS, Vols. 1-4); CT AR 001929-1949 (Record of Decision).)  The Final EIS stated there would be no adverse effect on historic properties, if an environmentally sensitive area was established.  The State Historic Property Officer ("SHPO") concurred in that finding.  (CT AR 000072-73, 000163-64.)  The Final EIS also includes measures for relating to two forms of post-review discoveries: unanticipated archaeological discoveries ("ARCH-2") and unanticipated discoveries of human remains ("ARCH-3").  (*See* CT AR 000072-73, 000117-118; *see also* CT AR 002297-2312 (NEPA/CEQA Re-Validation dated June 2016 ("2016 Re-Validation")).)

In 2007, Caltrans decided to proceed with phased construction, because of funding constraints.  "During the first phase of the project, …, Caltrans plan[ned] to complete a two-lane bypass, and it plans to complete the remaining two lanes as funding becomes available."  *See Ctr. for Biol. Diversity*, 2013 WL 6698740, at *2.  This litigation focuses on the first phase.  Construction on the first phase of the Willits Bypass Project is complete, and it was opened to

---

[2]      When the Court cites to the Caltrans Defendants' administrative record and their supplemental administrative record, it omits the document number and simply cites to the page numbers.  Therefore, instead of citing the Caltrans Defendants' AR as 1:000001-001928, the Court simply cites it as "CT AR 0000001-1928."

traffic in November 2016. (CT Supp. AR 001036.) The second phase of the Willits Bypass Project remains unfunded. According to Plaintiffs, at the time the Final EIS was issued, "Caltrans had only identified one archaeological site eligible for registry on the National Register of Historic Places" ("NHRP"), and they claim that "[s]ince 2013, Caltrans has identified at least thirty additional archaeological sites eligible for registry on the" NRHP. (Second Amended Complaint ("SAC") ¶¶ 17, 19.)

On June 4, 2013, Coyote Valley's Tribal Chairman, Michael Hunter, wrote to Charles Felder, a director at Caltrans, and requested "government-to-government" consultation. (Federal Highway Administration Administrative Record ("FHWA AR") 0007; CT AR 011681-82.)[3] On June 17, 2013, Mr. Felder responded to Mr. Hunter's letter. (CT AR 011694-95.) On June 25, 2013, Kendall Schinke, an Environmental Branch Chief at Caltrans, sent a letter to Coyote Valley, via Priscilla Hunter, enclosing copies of cultural resources documents prepared for the Willits Bypass Project. In that letter, Ms. Schinke stated that "[a]s we discussed on the phone, to request formal government-to-government consultation contact Vincent Mammano, Division Administrator at the [FHWA's] California Division[.]" (Id., 011698.)

On February 18, 2015, representatives of Coyote Valley met with representatives of Caltrans, the FHWA, and the Army Corps of Engineers. (Id., 013217-18, 17527). On March 17, 2015, Chairman Hunter sent a letter to Mr. Felder, in which Coyote Valley continued to raise concerns about the Willits Bypass Project. (Id., 013217-18.) On the same day, Chairman Hunter wrote to Mr. Mammano acknowledging the government-to-government consultation meeting on February 18, 2015. (Id., 017305-07.) In that letter, Chairman Hunter stated that "[t]he primary and ongoing request we articulated at this meeting was the need for a Supplemental EIS to contend with the many ancestral archaeological sites that have been discovered subsequent to the approval" of the Final EIS "both in the Project Area and Mitigation parcels" of the Willits Bypass Project. (Id., 017305.) Chairman Hunter also asserted that "Caltrans failed to exercise due

---

[3]  Both parties have submitted the administrative records on CD-ROMs. The June 4 letter is attached to the email at FHWA AR 0007 by way of a hyperlink in the subject of the email "Coyote Valley Bank of Pomo Indians ltr.pdf."

1  diligence in the initial archaeological survey efforts for the project," and "failed to adequately

2  protect sites discovered subsequent to the EIS approval for the project." (*Id.*)

3  It is undisputed that, on July 1, 2007, the FHWA and Caltrans entered into a Memorandum

4  of Understanding ("2007 MOU") relating to the Surface Transportation Project Pilot Delivery

5  Program (the "Pilot Program"), 23 U.S.C. section 327.[4] (*See* Glazer Decl., ¶ 2; Dkt. No. 32-1,

6  Glazer Decl., Ex. A (2007 MOU §§ 1.1.1, 3.1.1).) Under the Pilot Program, the Secretary of

7  Transportation could assign and a state could "assume, the responsibilities of the Secretary with

8  respect to one or more highway projects within" that state under the National Environmental

9  Policy Act ("NEPA"). 23 U.S.C. § 327(a)(2)(A). The Pilot Program also provided that, if a state

10 assumed responsibility for a project under Section 327(a)(2)(A), "the Secretary may assign to the

11 State, and the State may assume, all or part of the responsibilities of the Secretary for

12 environmental review, consultation, or other action required under any Federal environmental law

13 pertaining to the review or approval of a specific project." *Id.* § 327(a)(2)(B)(i). If a state

14 assumes "responsibility under subsection (a)(2) [it] shall be solely responsible and solely liable for

15 carrying out, in lieu of the Secretary, the responsibilities assumed under subsection (a)(2), until the

16 program is terminated as provided in subsection (i)." *Id.* § 327(e). "Any responsibility of the

17 Secretary not explicitly assumed by the State by written agreement under this section shall remain

18 the responsibility of the Secretary." *Id.* § 327(a)(2)(D).

19 The Willits Bypass Project is covered by the terms of the 2007 MOU. Under that MOU,

20 the FHWA assigned and Caltrans assumed "all of the USDOT Secretary's responsibilities under

21 NEPA" and "all of the USDOT Secretary's responsibilities for environmental review,

22 consultation, or other such action pertaining to the review or approval of a specific project as

23 ─────────────

24 [4]    The Pilot Program is now permanent. On September 25, 2012, the FHWA and Caltrans
   entered into a MOU that extended the assignments and assumptions of responsibilities set forth in

25 the 2007 MOU. (*See* Dkt. No. 32, Declaration of David B. Glazer ("Glazer Decl."), ¶ 2; Dkt. No.
   32-2, Glazer Decl., Ex. A at ECF p. 26-31 (Memorandum of Understanding dated September 2012

26 and effective on October 1, 2012 ("2012 MOU")).) On December 23, 2016, the parties entered into
   a MOU that renewed Caltrans' participation in the program. That MOU took effect on January 1,

27 2017 ("2017 MOU"). (CT Supp. AR 2905-31.) The California Legislature did not renew the
   State's wavier of sovereign immunity under California Streets and Highways Code section 820.1

28 until March 30, 2017. As a result, the Caltrans Defendants' assumption of responsibilities was
   suspended under Section 12.3.2 of the 2017 MOU until that date

1    required under" Section 106 of the National Historic Preservation Act ("NHPA") and 23 U.S.C.

2    section 138 and Section 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. section

3    303 (the "Federal Highway Statutes"). (2007 MOU §§ 3.1.1, 3.2.1.I, 3.2.1.Y.) The terms of the

4    2007 MOU also provide that "Caltrans shall be solely liable and solely responsible for carrying

5    out all of the USDOT Secretary's responsibilities it has assumed under part 3 of this MOU subject

6    to the limitations of the Eleventh Amendment waiver acknowledged in section 4.3.1 of this MOU.

7    The FHWA and USDOT shall have no responsibility or liability for the performance of the

8    responsibilities assumed by Caltrans, including any decision or approval made by Caltrans while

9    participating in the Pilot Program." (*Id.* § 6.1.) It is undisputed that the Federal Defendants

10   retained their obligation to engage in government-to-government consultation with "federally

11   recognized Indian tribes" under Section 106 of the NHPA. (*See* 2007 MOU § 3.2.3.)[5]

12       It also is undisputed that the FHWA, Caltrans, California's SHPO, and the Advisory

13   Council on Historic Preservation (the "Council") entered into a Statewide Programmatic

14   Agreement regarding compliance with Section 106 of the NHPA as it pertains to the

15   administration of the Federal-aid Highway Program in California. That programmatic agreement

16   had an effective date of January 1, 2004, and it was amended and extended with an effective date

17   of January 1, 2014. (CT AR 17577-17630, First Amended Programmatic Agreement ("FAPA").)

18   The FAPA states that as a result of the 2007 MOU, among others, "Caltrans is deemed to be a

19   federal agency for all Federal-aid Highway projects it has assumed[.]" (FAPA at 1.) It also notes

20   that the FHWA as a federal agency has a "unique legal relationship with Indian tribes …, and

21   while an Indian tribe may agree to work directly with Caltrans as part of the 36 CFR 800

22   compliance process, the FHWA … remain[s] legally responsible for government-to-government

23   consultation with Indian tribes[.]" (FAPA at 2; *see also id.*, Stipulations IV.B & VI.B-C.) The

24   FAPA also accounts for "post-review" discoveries. (*Id.*, Stipulation XV.) The parties to this

---

[5]      It is evident from the record that the assignment of responsibilities has created confusion regarding the nature and scope of "government-to-government consultation" and the nature and scope of the Section 106 consultation process. (*See, e.g.,* CT AR 200547; *see also id.* 011681-82 (letter requesting "government-to-government" consultation with Caltrans), 012565.)

1    lawsuit have not entered into a specific programmatic agreement or memorandum of agreement

2    for the Willits Bypass Project.

3        The Court shall address additional facts as necessary in the analysis.

4    **B.    Procedural History.**

5        On October 30, 2015, Plaintiffs filed the original complaint in this case and alleged the

6    Federal Defendants and the Caltrans Defendants each violated NEPA, the "Federal Highway

7    Statutes"), and Section 106 of the NHPA.  The Federal Defendants moved to dismiss.  Before the

8    Court resolved that motion, the parties attempted to, but could not, settle the matter.  On August 2,

9    2016, the Court granted the Federal Defendants' motion to dismiss, with leave to amend.  On

10   August 26, 2016, Plaintiffs filed their first amended complaint, asserting the same claims for

11   relief.

12       On September 7, 2016, all Defendants moved to dismiss.  In the interim, the parties

13   continued to pursue settlement efforts but, again, were not successful.  On January 23, 2017, the

14   Court granted, in part, and denied, in part, the Caltrans Defendants' motion to dismiss.  *Round*

15   *Valley Indian Tribes of Cal. v. U.S. Dep't of Transp.*, No. 15-cv-04987-JSW, 2017 WL 282980

16   (N.D. Cal. Jan. 31, 2017).  On March 10, 2017, the Court granted, in part, and denied, in part, the

17   Federal Defendants' motion to dismiss and gave Plaintiffs leave to amend.  *Round Valley Indian*

18   *Tribes of Cal. v. U.S. Dep't of Transp.*, 15-cv-04987-JSW, 2017 WL 950956 (N.D. Cal. Mar. 10,

19   2017).  On April 7, 2017, Plaintiffs filed their SAC, asserting the same claims for relief.

20   **C.    Standard of Review Under the Administrative Procedures Act ("APA").**

21       Plaintiffs bring their claims pursuant to the APA, which permits a court to "compel agency

22   action unlawfully withheld or unreasonably delayed," or to "hold unlawful and set aside agency

23   action, findings and conclusions found to be - arbitrary, capricious, an abuse of discretion, or

24   otherwise not in accordance with law."  5 U.S.C. §§ 706(1)-(2)(A).  "A claim to compel action,"

25   under Section 706(1), "may proceed 'only where a plaintiff asserts that an agency failed to take a

26   discrete agency action that it is required to take.'"  *Grand Canyon Trust v. Williams*, 98 F. Supp.

27   3d 1044, 1051 (D. Ariz. 2015) (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64

28   (2004)) (emphasis in *Norton*).

As part of their NEPA claim, Plaintiffs argue that the Caltrans Defendants failed to prepare a supplemental EIS. When a Court reviews an agency's decision not to supplement an EIS under the APA, it generally applies the "arbitrary and capricious" standard. *See Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 376 (1989); *see also Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 556 (9th Cir. 2000) ("*Dombeck*") ("The Forest Service's decision to forego an SEIS should not be set aside unless it was arbitrary or capricious."). However, "[a]n action to compel an agency to prepare a [supplemental EIS] … is not a challenge to a final agency decision, but rather an action arising under 5 U.S.C. § 706(1)." *Dombeck*, 222 F.3d at 560.[6]

In *Native Songbird Care and Conservation v. LaHood*, the plaintiffs argued the defendants should have prepared a supplemental EIS and invoked both sections of the APA to support their claim. No. 13-cv-02265-JST, 2013 WL 3355657, at *5-6 (N.D. Cal. July 2, 2013). The court viewed that decision to be prudent. "When the agency has prepared a written determination that a court can review, the distinction between" Sections 706(1) and 706(2) "makes little difference. Either the determination itself is a final agency action reviewable," under Section 706(2)(A), "or else the court reviews the [written determination] to determine whether the agency has 'unlawfully withheld' the preparation of a Supplemental EIS pursuant to" Section 706(1). *Id.*, 2013 WL 3355657, at *6; *see also id.*, 2013 WL 3355657, at *6 n.6 (noting that "published authority on this issue generally demonstrates that in considering an agency's failure to prepare a Supplemental EIS, courts review a written determination or at least an expert determination").

The Court finds that this is a case where the distinction between Sections 706(1) and 706(2) is one without a difference. As discussed above, the Caltrans Defendants prepared a re-validation in 2016, which sets forth the Caltrans Defendants' reasoning as to why a supplemental EIS was not required. *See Idaho Sporting Congress v. Alexander*, 222 F.3d 562, 566 (9th Cir. 2000) ("courts have upheld agency use of SIRs and similar procedures for the purpose of determining whether new information or changed circumstances require the preparation of a

---

[6] At the hearing, in response to the Court's questions relating to the statutes of limitations, Plaintiffs argued that their claims are based on the Caltrans Defendants' failure to act. In their SAC, Plaintiffs invoke both Sections 706(1) and 706(2)(A). (*See* SAC ¶¶ 77, 233.)

supplemental EA or EIS"); *see also Price Road*, 113 F.3d at 1510.  Therefore, the Court will apply

standard set forth *Marsh*:

> [T]he … court "must consider whether the decision was based on a
> consideration of the relevant factors and whether there has been a
> clear error of judgment."  This inquiry must be "searching and
> careful," but "the ultimate standard of review is a narrow one." …
> When specialists express conflicting views, an agency must have
> discretion to rely on the reasonable opinions of its own qualified
> experts even if, as an original matter, a court might find contrary
> views more persuasive.  On the other hand, in the context of
> reviewing a decision not to supplement an EIS, courts should not
> automatically defer to the agency's express reliance on an interest in
> finality without carefully reviewing the record and satisfying
> themselves that the agency has made a reasoned decision based on
> its evaluation of the significance - or lack of significance - of the
> new information.

*Marsh*, 490 U.S. at 378 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402,

416 (1971)).

Under this standard, the Court will reverse the Caltrans Defendants' decision not to

prepare a supplemental EIS "as arbitrary and capricious only if [they] relied on factors Congress

did not intend [them] to consider, entirely failed to consider an important aspect of the problem, or

offered an explanation that runs counter to the evidence before [them] or is so implausible that it

could not be ascribed to a difference in view or the product of agency expertise."  *Lands Council

v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008), *overruled on other grounds by Winter v. Nat. Res.

Def. Council, Inc.*, 555 U.S. 7 (2008) (internal quotations and citations omitted).

## D.    Evidentiary Issues.

The Caltrans Defendants move to strike the declarations submitted by Priscilla Henderson

(Dkt. No. 134), Eddie Knight (Dkt. No. 135), and Mike Knight (Dkt. No. 136), on the basis that

the declarations are extra-record evidence.  The declarations include exhibits that come from the

Caltrans Defendants' administrative record.  Those exhibits, therefore, would not constitute extra-

record evidence.  However, the declarants do not simply attest that the exhibits are what they

purport to be.  Rather, Ms. Hunter sets forth her views of the consultation process.  Mr. Eddie

Knight discusses issues relating to tribal monitors and how they should be used during a project

like the Willits Bypass Project.  Mr. Mike Knight, who is Chairman of the Sherwood Valley Band

of Pomo Indians ("Sherwood Valley"), discusses Sherwood Valley's decision to not sign a draft programmatic agreement.

When a court is presented with a case brought under APA, its task "is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record" presented by the agency. *Fl. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). In the Ninth Circuit, a court may consider extra-record evidence "(1) if necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) 'when the agency has relied on documents not in the record,' … (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter,'" or (4) when a plaintiff shows an agency has acted in bad faith. *Sw. Ctr. for Bio. Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (quoting *Inland Empire Public Lands Council v. Glickman*, 88 F.3d 697, 703-04 (9th Cir. 1996)).

The Court finds Plaintiffs have not shown any of these exceptions apply. First, none of the declarants are employees of the Caltrans Defendants. *See, e.g., Friends of the Payette v. Horseshoe Bend Hydroelectric Co.*, 988 F.2d 989, 997 (9th Cir. 1993) ("[w]hen a failure to explain action frustrates judicial review, the reviewing court may obtain from the agency, through affidavit or testimony, additional explanations for the agency's decisions") (emphasis added). Plaintiffs also fail to show how the administrative record is insufficient to explain the Caltrans Defendants' decisions; they simply argue it is.[7] Plaintiffs do not suggest the Caltrans Defendants relied on any documents that are not in the administrative record, and they have not demonstrated the Caltrans Defendants acted in bad faith. Finally, Plaintiffs have not demonstrated how the declarations might explain any technical terms or complex subject matter. Accordingly, to the extent Plaintiffs' claims are premised upon actions the Caltrans Defendants are alleged to have

---

[7] In addition, the Court set deadlines for the parties to address any disputes about the sufficiency of the administrative records, which were extended several times while the parties attempted to settle this matter. The Caltrans Defendants lodged their administrative record on July 7, 2016. The final deadline to file motions relating to disputes over the contents of the administrative record was set for July 25, 2016. Plaintiffs did not file any motions. The Federal Defendants lodged their administrative record in May 2017, and again Plaintiffs did not challenge its content.

taken, the Court sustains, in part, the objections to the substance of the declarations.

Plaintiffs also argue that their claims are premised on the Caltrans Defendants' failure to act, specifically the failure to prepare a supplemental EIS and the failure to engage in consultation. In such cases, "review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." *Dombeck*, 222 F.3d at 560. To the extent that is true, the Court overrules, in part, the Caltrans Defendants' objections. While the Court will consider the declarations, it will do so only where Plaintiffs have cited to particular paragraphs of a declaration in their briefs. *See, e.g., Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("As the Seventh Circuit observed in its now familiar maxim, '[j]udges are not like pigs, hunting for truffles buried in briefs.'") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (stating that it is not a court's task "to scour the record in search of a genuine issue of triable fact") (quoting *Richards v. Combined Ins. Co. of Amer.*, 55 F.3d 247, 251 (7th Cir. 1995)).[8]

If the Court considers a particular paragraph of a declaration, and the Caltrans Defendants have objected on other grounds, such as hearsay or lack of foundation, the Court will address those objections on an individual basis.

### E.      The Caltrans Defendants' Waiver Argument.

The Caltrans Defendants argue the Court should refuse to consider Plaintiffs' motion and find that Plaintiffs waived all arguments by failing to cite to the record and to pertinent legal authority to support their argument. Prior to the hearing, the Court issued a notice of questions stating that it was inclined to deny that request in light of the fact that the parties filed cross-motions for summary judgment.

In their opening brief, Plaintiffs fail to direct the Court to the factual support for their arguments. In their opposition and reply, they do cite to exhibits to the declarations on which they rely, including exhibits from the administrative records. Plaintiffs do not always explain how the

---

[8]      The Court's rulings apply to the supplemental declarations of Eddie Knight and Owen Knight (Dkt. Nos. 145-1, 145-14), which Plaintiffs submitted with their combined opposition and reply brief.

cases they have cited are supportive of their position or fail to support their arguments with legal authority. However, the parties have cross-moved for summary judgment. Therefore, with the exception of the second claim for relief, the Court will stand by its tentative ruling on Plaintiffs' claims under NEPA and the NHPA and will evaluate those claims on the merits, even if it has to engage in some truffle hunting to do so. *See Ind. Towers*, 350 F.3d at 929.[9]

Plaintiffs' second claim for relief alleges violations of the Federal Highway Statutes. Plaintiffs do not address the legal standards applicable to those claims and fail to show how the Caltrans Defendants violated those statutes. Accordingly, the Court concludes Plaintiffs have not met their burden to show a violation of those statutes and have waived any argument in support of their second claim for relief. *Cf. Greenwood*, 28 F.3d at 977.

Accordingly, the Court grants, in part, and denies, in part, the Caltrans Defendants' cross-motion on this basis.

## F.    The Court Concludes the Case Is Not Moot.

The Caltrans Defendants' cross-motion focuses on the merits of the Plaintiffs' claims. They also argue, in the alternative, that Plaintiffs' claims are moot, because construction on the Willits Bypass Project is complete and because mitigation efforts are nearly complete. Because that argument relates to a threshold jurisdictional issue, *i.e.*, is there a case or controversy for the Court to adjudicate, the Court addresses it at the outset.

"A case becomes moot whenever it 'los[es] its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.'" *West v. Sec'y of the Dep't of Transp.*, 206 F.3d 920, 924 (9th Cir. 2000) (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969) (alterations in *West*). In order for a case to be justiciable, the "controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy, admitting of a specific relief through a decree of a

---

[9]    Plaintiffs' allegations in the SAC are extensive, but they have limited their arguments in support of their motion for summary judgment. Therefore, to the extent Plaintiffs fail to address allegations in the SAC that might also support their claims, the Court finds the Plaintiffs have waived any argument based on those allegations. *Cf. Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (noting that "a bare assertion does not preserve claim, particularly when, as here, a host of other issues are presented for review").

conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).[10]

In *West*, the plaintiff challenged the FHWA's determination that a highway interchange project, which would be conducted in two phases, satisfied the criteria for a categorical exclusion under NEPA. 206 F.3d at 923-24. One of the defendants argued the case was moot, because construction had been completed on the first phase of the project, and the interchange had been opened to traffic. *Id.* at 924 & n.1. The court rejected this argument. It reasoned that the second stage of the project had not begun, and "upon finding that defendants failed to comply with NEPA, our remedial powers would include remanding for additional environmental review and, conceivably, ordering the interchange closed or taken down. … The fact that Stage 1 of the interchange has been constructed and is operational is insufficient to render the case moot." *Id.* at 925-26; *cf. Columbia Basin Land Protection Ass'n v. Schlesinger*, 643 F.2d 585, 591 n.1 (9th Cir. 1981). The *West* court reached this conclusion, even though it did not order that the interchange be taken down as a remedy. 206 F.3d at 929.

The Court finds the facts here are analogous to the facts in *West*. The construction of the first phase of the Willits Bypass is complete and open to traffic, and the second phase has not yet begun, although it has not been funded. If the Court were to find the Caltrans Defendants violated NEPA or the NHPA, the Court could remand for additional environmental review and, as in *West*, "however cumbersome or costly it might be" conceivably order the Willits Bypass closed or taken down. 206 F.3d at 925 n.1.

Accordingly, the Court concludes that the Caltrans Defendants have not met their "heavy" burden to show this case is moot, and it denies, in part, their cross-motion on that basis. *Id.* at 924.

## G.    The Caltrans Defendants' Statute of Limitations and Laches Defenses.

The Caltrans Defendants also argue that Plaintiffs' claims are barred by the statute of

---

[10]    According to the record, large portions of mitigation work are complete. (*See, e.g.,* CT Supp. AR 001954-55.) However, it also shows that the mitigation contracts awarded have estimated completion dates of June 2020 and March 2021. (*Id.*)

limitations and by laches.

### 1. Statute of Limitations.

"[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). The Record of Decision for the Willits Bypass Project was issued in December 2006 and published in the Federal Register in January 2007.[11] At the hearing, Plaintiffs conceded that a claim based on the approval of the Final EIS would be barred. Therefore, to the extent Plaintiffs' premise either their NEPA or their NHPA claims against the Caltrans Defendants on conduct prior to October 30, 2009, the Court finds those claims are barred by Section 2401(a).[12]

Plaintiffs allege that the Caltrans Defendants violated NEPA by failing to prepare a supplemental EIS and by failing to engage in consultation under the NHPA, both of which Plaintiffs argue were warranted based on developments that occurred after the Final EIS was approved. The Caltrans Defendants have stated that "five developments … occurred that warranted additional consideration of cultural resources for the Willits Bypass Project." (2016 Re-Validation at 4.)

According to that document, the relevant developments were:

> 1. Archeological surveys in 2008-09 of approximately 2,000 acres within Little Lake Valley to be utilized for biological and wetland mitigation commitments.
>
> 2. The implementation of the Buried Site Testing Program between October 2010 and April 2013, resulting in the submittal of a Supplemental Historic Property Survey Report to the California [SHPO] requesting concurrence on findings.
>
> …

---

[11] In its Order resolving the Plaintiffs' and the Federal Defendants' cross-motions, the Court inadvertently omitted the reference to publication in the Federal Register. (*See* Dkt. No. 157, Order at 15:9-10.)

[12] Any claims based on approval of the Final EIS also would be barred by 23 U.S.C. section 139(l)(1), which at the time the Final EIS was approved required a claim be filed within 180 days of publication in the Federal Register of the final approval of the approval of a highway project. That limitations period was reduced to 150 days. The Court also concludes that any claim based on the re-validations issued in 2010 and 2011 is barred by the statute of limitations set forth in 23 U.S.C. section 139(*l*)(1).

United States District Court
Northern District of California

    4.     The identification of eighteen (18) archaeological sites during the 2013 and 2014 construction seasons (between June 2013 and October 2014).

    5.     A possible inadvertent effect to a possible archeological resource (CA-MEN-3571).

(2016 Re-Validation at 4; *see also id.* at 5-11 (describing developments in more detail).)  Thus, the record demonstrates that certain events occurred within the limitations period that could support Plaintiffs' claims.

The Court grants, in part, and denies, in part, the Caltrans Defendants' cross-motion to the extent it rests on a statute of limitations defense.  The Court shall only evaluate events that occurred on or after October 31, 2009 and that would not be barred by the limitations period set forth in 23 U.S.C. section 239(l)(1).

### 2.     Laches.

The Caltrans Defendants also argue that Plaintiffs' NHPA and NEPA claims are barred by laches.  In order to prevail on this defense, the Caltrans Defendants must show that: (1) Plaintiffs lacked diligence; and (2) the Caltrans Defendants suffered prejudice.  *See Apache Survival Coal. v. United States*, 21 F.3d 895, 905 (9th Cir. 1994).  In environmental cases, "these criteria must be applied in light of the principle that laches must be invoked sparingly in suits brought to vindicate the public interest."  *Id.* (internal quotations and alterations omitted).  Because the Court has determined that claims prior to October 30, 2009 would be barred by the statute of limitations, and because Plaintiffs conceded that claims based on the approval of the Final EIS would be barred, the Court will evaluate the period between October 31, 2009 and October 30, 2015, when Plaintiffs filed suit.

Prior to 2013, the record reflects one meeting between the Caltrans Defendants and Sherwood Valley where a member of Round Valley was present.  (CT AR 011528 (entry dated 6/2/11).)  After that date, communications between Plaintiffs and Caltrans are not reflected in the Caltrans Defendants' consultation log until May 2013, at a meeting held prior to a field visit.  (*Id.* 011532 (entry dated 5/30/2013).)  Then, on June 4, 2013, Coyote Valley sent its letter to Mr. Felder requesting government-to-government consultation.

With the exception of the approval of the Final EIS, most of the events about which Plaintiffs complain relate to post-review discoveries that occurred once construction started in 2013. Those events fall outside the generally applicable six year statute of limitations. Therefore, the Court finds the Caltrans Defendants have not met their burden to show inexcusable delay by the Plaintiffs, at least to the extent their claims do not relate to approval of the Final EIS, and it denies, in part, their cross-motion on that basis.

**H.      The Use of Tribal Monitors.**

Plaintiffs' arguments in support of their motion focus heavily on the issue of how tribal monitors have been and should be used during the construction and mitigation process. At the hearing on the motion, Plaintiffs conceded neither NEPA nor the NHPA impose a legal duty on the Caltrans Defendants to use tribal monitors. They also did not argue those statutes require the Caltrans Defendants to utilize monitors in a particular fashion.[13] Plaintiffs did refer the Court to the terms of Attachment 6 to the FAPA to support their arguments on this issue, and the Attachment does call for monitoring as part of a data recovery plan. However, the Attachment does not set forth any specific requirements as to how monitors are to be used.

Plaintiffs also cited to Post-Review Discovery and Monitoring Plan ("PRDMP"), dated December 1, 2015, to support their argument as to how the Caltrans Defendants are required to use tribal monitors. However, according to the record, Plaintiffs objected to and ultimately refused to sign the PRDMP. (*See* CT AR 014052-55, 014890-91, 024938-44.) Plaintiffs fail to provide the Court with any legal authority to support their position that it should now require Caltrans to follow procedures that Plaintiffs objected to when they were proposed. The Court concludes that Plaintiffs have not met their burden to show that the Caltrans Defendants violated any legal duty under the NHPA or NEPA with respect to the way the Caltrans Defendants utilize tribal monitors.

Accordingly, the Court denies Plaintiffs' motion and grants the Caltrans Defendants' cross-motion on this issue.

---

[13]      The record does show that tribal monitors from both Coyote Valley and Round Valley have been present during archeological fieldwork on various sites. (*See, e.g.*, CT AR 005582, 005585, 005599.)

15

United States District Court
Northern District of California

**I.      The NEPA Claim.**

NEPA "establishes a 'national policy [to] encourage productive and enjoyable harmony between man and his environment,' and was intended to reduce or eliminate environmental damage and to promote 'the understanding of the ecological systems and natural resources important to' the United States." *Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 756 (2004) (quoting 42 U.S.C. § 4321. NEPA does not mandate particular results; it imposes "procedural requirements on federal agencies with a particular focus on requiring agencies to undertake analyses of the environmental impact of their proposals and actions." *Id.* (citing *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349-51 (1989)); *see also Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1212 (9th Cir. 1998) ("NEPA ensures that the agency ... will have available, and will carefully consider, detailed information concerning significant environmental impacts; it also guarantees that the relevant information will be made available to the larger [public] audience.") (internal quotation marks and citation omitted). "NEPA merely prohibits uninformed - rather than unwise-agency action." *Robertson*, 490 U.S. at 351.

NEPA requires federal agencies to prepare a detailed EIS for all "major Federal actions significantly affecting the quality of the human environment." *Blue Mountains*, 161 F.3d at 1211-12 (quoting 42 U.S.C. § 4332(2)(C)). "NEPA also imposes a continuing duty to supplement previous environmental documents." *Price Road Neighborhood Ass'n v. U.S. Dep't of Transp.*, 113 F.3d 1505, 1509 (9th Cir. 1997). In their opening brief, Plaintiffs argued the Caltrans Defendants violated NEPA by failing to prepare a supplemental EIS once additional archaeological sites were discovered. In their reply brief, Plaintiffs fail to address the Caltrans Defendants' response to this issue.[14] "[A]n agency need not supplement an EIS every time new information comes to light after the EIS is finalized." *Marsh*, 490 U.S. at 373. Rather, the duty to prepare a supplemental EIS arises only when there are changes to a project or new information

---

[14]      In that brief, Plaintiffs focus exclusively on the NHPA Claim and their arguments regarding tribal monitors.

16

1  which result in environmental impacts that "reach a certain threshold," *i.e.*, they are significant or

2  uncertain. *Price Road*, 116 F.3d at 1509; *see also* 23 C.F.R. § 771.130(a)(1)-(2).

3       In the 2016 Re-Validation, the Caltrans Defendants concluded that the Willits Bypass

4  Project "has not and will not have an adverse effect on historic properties, and therefore, a

5  supplemental EIS/EIR is not necessary." (2016 Re-Validation at 12.) In that document, the

6  Caltrans Defendants discuss a number of studies that were conducted with regard to post-review

7  discoveries and the Caltrans Defendants' efforts to determine whether those sites were eligible for

8  listing on the NRHP. (*See, e.g., id.* at 5-7, 8-10.) Plaintiffs have neither suggested nor put forth

9  evidence that would suggest those studies were flawed. The Caltrans Defendants also

10 acknowledged that the Willits Bypass Project "could not avoid nine (9) archaeological sites, all of

11 which were assumed NRHP-eligible for Section 106 compliance." (*Id.* at 12.) With the exception

12 of site CA-MEN-3571, the Caltrans Defendants stated that:

> [d]ata recovery excavations at the sites … indicate that the areas of
> the sites within the ADI [area of direct impact] did not yield
> important archaeological data (Criterion D value) while
> ethnographic and ethnohistoric background research has not
> provided evidence to indicate that these sites made a significant
> contribution to the development of Pomo culture in Little Lake
> Valley (Criterion A value).

17 (*Id.*) Those conclusions are supported by the record. (*See, e.g.,* CT AR 005584, 005606-06,

18 005592-93, 005594-98.)

19      The 2016 Re-Validation also addresses whether there would be any adverse effects to post-

20 review discoveries and, if so, whether the measures set forth in the Final EIS, *e.g.*, ARCH-2,

21 ARCH-3 and ARCH-4, would be sufficient to address any such effects. The record demonstrates

22 that the SHPO concurred with many of the Caltrans Defendants' findings or made findings of "no

23 adverse effect with standard conditions/ESA." (*See, e.g.*, CT AR 002790-93.) Further, the

24 Plaintiffs have not demonstrated that the Caltrans Defendants' decision was based on factors that

25 Congress did not intend the Caltrans Defendants' to consider, that they "entirely failed to consider

26 an important aspect of the problem," "offered an explanation that runs counter to the evidence

27 before" them, or that the decision "is so implausible that it could not be ascribed to a difference in

28 view or the product of agency expertise." *Lands Council*, 537 F.3d at 987.

NEPA requires agencies "to take a 'hard look' at the environmental effects of their planned action, even after a proposal has received initial approval." *Marsh*, 490 U.S. at 374. It is beyond dispute that during construction, at least one site discovered after the Final EIS was approved was damaged, although the Caltrans Defendants dispute the severity of the damage. The Court does not wish to minimize that incident or the importance to Plaintiffs of the area in which the Willits Bypass Project has been constructed. (*See, e.g.*, 2016 Re-Validation at 10-11 (referencing CA-MEN-3571), CT AR 002972 (same), CT AR 002974-76, CT AR 014890-92.) However, the Court concludes the Caltrans Defendants did take a hard look at the changes to the Willits Bypass Project and the information that developed after the Final EIS was issued. Therefore, the Court concludes that the Caltrans Defendants' decision not to prepare a supplemental EIS was neither arbitrary nor capricious.

Accordingly, the Court denies Plaintiffs' motion, and grants the Caltrans Defendant' cross-motion on the NEPA claim.

**J.      The NHPA Claim.**

      **1.      Statutory and Regulatory Framework.**

Section 106 of the NHPA ("Section 106") requires that a federal agency with the "authority to license any undertaking, prior to the approval or expenditure of any Federal funds on the undertaking or prior to the issuance of any license, shall take into account the effect of the undertaking on any historic property." 54 U.S.C. § 306108. An "undertaking" is "a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including those carried out by or on behalf of a Federal agency; those carried out with Federal financial assistance; and those requiring a Federal permit, license or approval." 36 C.F.R. § 800.16(y). Plaintiffs allege, and the Federal Defendants have not disputed, that the Willits Bypass Project qualifies as an "undertaking."

Section 106 requires an agency to "stop, look, and listen" to "the effects of its programs." *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 805 (9th Cir. 1999). Therefore, a federal agency must

> make a reasonable and good faith effort to identify historic
> properties; determine whether identified properties are eligible for
> listing on the National Register …; assess the effects of the
> undertaking on any eligible historic properties found; determine
> whether the effect will be adverse; and avoid or mitigate any adverse
> effect. The [agency] must confer with the [SHPO] and seek the
> approval of the [Council].

*Muckleshoot*, 177 F.3d at 805 (brackets in original); *see also* 36 C.F.R. §§ 800.3 (initiation of

process), 800.4 (identification of historic properties), 800.5 (assessment of adverse effects), and

800.6 (resolution of adverse effects). In addition, as part of this process, a federal agency must

engage in consultation with a number of parties. *See* 36 C.F.R. § 800.2(c). "Consultation means

the process of seeking, discussing, and considering the views of other participants, and, where

feasible, seeking agreement with them regarding matters arising in the section 106 process. The

Secretary's 'Standards and Guidelines for Federal Agency Preservation Programs pursuant to the

National Historic Preservation Act' provide further guidance on consultation." 36 CFR §

300.16(f).

"When an undertaking may affect properties of historic value to an Indian tribe on non-

Indian lands, the consulting parties shall afford such tribe the opportunity to participate as

interested persons." 36 C.F.R. § 800.1(c)(2)(iii); *see also Te-Moak Tribe of Western Shoshone of

Nev. v. U.S. Dep't of the Interior*, 608 F.3d 592, 607 (9th Cir. 2010) (federal agencies required "to

consult with tribes that 'attach[] religious and cultural significance to historic properties that may

be affected by an undertaking'") (brackets in original). When an agency engages in consultation

with a tribe, it "must recognize the government-to-government relationship between the Federal

Government and Indian tribes." Id. § 800.2(c)(2)(ii)(C). Thus, "the agency official shall consult

with representatives designated or identified by the tribal government or the governing body[.]"

*Id.*

An agency must provide a tribe with "a reasonable opportunity to identify its concerns

about historic properties, advise on the identification and evaluation of historic properties,

including those of traditional religious and cultural importance, articulate its views on the

undertaking's effects on such properties, and participate in the resolution of adverse effects." 36

19

C.F.R. § 800(c)(2)(ii)(A). A failure to engage in Section 106 consultation "may be grounds for setting aside an agency action." *Colorado River Indian Tribes v. Dep't of the Interior*, No. ED CV 14-02504 JAK (SPx), 2015 WL 12661945, at *13 (C.D. Cal. June 11, 2015) (citing *Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 797 (9th Cir. 2006)).

The Ninth Circuit recently held that "the current definition of 'undertaking'" does not encompass "a continuing obligation to evaluate previously approved projects." *Havasupai Tribe v. Provencio*, 876 F.3d 1242, 1251 (9th Cir. 2017). However, NHPA's implementing regulations do address post-review discoveries and an agency's continuing obligations under the NHPA. *Id.*, (citing 36 C.F.R. § 800.13). "An agency official may develop a programmatic agreement pursuant to § 800.14(b) to govern the actions to be taken when historic properties are discovered during the implementation of an undertaking." *Id.* § 800.13(a)(1).[15] If there is no process in place under Section 800.13(a) and "historic properties are discovered or unanticipated effects on historic properties found after the agency official has completed the section 106 process ... , the agency official shall make reasonable efforts to avoid, minimize, or mitigate adverse effects to such properties[.]" *Id.* § 800.13(b). If that occurs and construction has not commenced, the agency official must "consult to resolve adverse effects pursuant to § 800.6[.]" *Id.* § 800.13(b)(1). If the undertaking has been approved and construction has commenced, an agency official must "determine actions that the agency official can take to resolve adverse effects, and notify the SHPO/THPO [tribal historic preservation officer], any Indian tribe … that might attach religious and cultural significance to the affected property, and the Council within 48 hours of the discovery." *Id.* § 800.13(b)(3).

### 2. Merits.

Plaintiffs argue that the Caltrans Defendants violated Section 106: (1) by failing to engage in "government to government consultation" with Plaintiffs before construction and once construction started and additional sites were located and (2) by failing to implement a

---

[15]     Section 800.14(b) provides that the Council and a federal agency "may negotiate a programmatic agreement to govern the implementation of a particular program or the resolution of adverse effects from certain complex project situations or multiple undertakings."

memorandum of agreement or a project specific programmatic agreement with Plaintiffs.

   a.   **The Section 106 Consultation Process and "Government-to-Government" Consultation.**

Plaintiffs argue that the Caltrans Defendants violated Section 106, by failing to engage in "government-to-government" consultation. The Caltrans Defendants are correct that the duty to engage in "government-to-government" consultation remains with the Federal Defendants. For that reason, the Court denies, in part, Plaintiffs' motion, and it grants, in part the Caltrans Defendants' cross-motion.

The Caltrans Defendants do not dispute that they are required to engage in the consultation process required by Section 106 of the NHPA.[16] Plaintiffs do not identify any aspect of the Willits Bypass Project arising after the Final EIS and Record of Decision were issued, which would be considered a separate "undertaking" that would require a new Section 106 consultation process. That is not necessarily fatal to Plaintiffs' claim.

As set forth above, the NHPA's implementing regulations contemplate post-review discoveries may occur, 36 C.F.R. § 800.13, and it is undisputed that there have been post-review discoveries. In addition, although the FAPA governs all highway projects in California, it is undisputed that there is not a programmatic agreement specific to the Willits Bypass Project in place. Further, according to the record, there was no plan in place for post-review discoveries on the Willits Bypass Project, which implicates the provisions of Stipulation XV.B of the FAPA. (*See, e.g.*, FHWA AR 0008, hyperlink to "Notification of PRD #1 on the WBP.docx".)

---

[16]    For example, although the following event occurs outside the limitations period, the record shows that on a recommendation from the Native American Heritage Commission ("NAHC"), the Caltrans Defendants sent a letter to a number of Native American tribes, including Plaintiffs, "re-opening the notice phase of the WPB to provide an opportunity for the NA community to ask questions provide input, or express concerns." (*See* CT AR 011525-26 (quote from entry dated 12/22/08), 205006-009 (12/16/08 letter from NAHC to Caltrans), 205053 (12/9/08 letter from Caltrans to NAHC), 011614 (12/22/08 letter from Caltrans to Coyote Valley), 011617 (12/22/08 letter from Caltrans to Round Valley).) The letters dated December 22, 2008 state that if the Caltrans Defendants did not receive a response to the letter within thirty (30) days, "we will assume that you have no concerns or information regarding this project," and show that the letter included as an attachment a Location Map, Willits, USGS Quadrangle. (CT AR 011614, 011617.) Although other Native American tribes in the area apparently responded that letter, it does not appear that Plaintiffs did. (See, e.g., CT AR 011526-27.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Compliance with procedures set forth in a programmatic agreement will "serve as a 'substitute' for

2   the regulations that concerns consultation for purposes of the agency's compliance with Section

3   106." *Colorado River Indian Tribes*, 2015 WL 12661945, at *13.

4       Plaintiffs have not shown how the Caltrans Defendants failed to comply with the

5   procedures set forth in the FAPA regarding post-review discoveries. Further, to satisfy their

6   responsibility to engage Section 106 consultation, the Caltrans Defendants were required to ensure

7   Plaintiffs had a "reasonable opportunity" to, *inter alia*, identify their concerns about any such

8   discoveries, articulate their views on the Willits Bypass Project's effects on those discoveries and

9   participate in the resolution of any adverse effects to those discoveries. *See Te-Moak Tribe*, 608

10  F.3d at 608; 36 C.F.R. § 800.2(c)(2)(ii)(C).

11      As discussed in connection with the NEPA claim, the record shows that when additional

12  discoveries were located, the Caltrans Defendants involved Plaintiffs in monitoring activity on the

13  sites. The record also demonstrates that once Coyote Valley wrote to the Caltrans Defendants in

14  June 2013 about its concerns, the Caltrans Defendants and designated tribal representatives

15  communicated in writing regarding the Plaintiffs' concerns, attempted to negotiate a project

16  specific programmatic agreement, and attended face-to-face meetings about the post-review

17  discoveries and Plaintiffs' concerns with issues relating to those sites.[17] (*See, e.g.*, CT AR 011532

18  (entry dated 5/30/13), 011533 (entry dated 6/28/13), 011535 (entries dated 8/27/13 and 10/23/13),

19  011694-95, 011698-99, 011728, 011764, 012565-66, 013217-19, 017499, 017527, 024938-44,

20  042789-95, 200547-48.)

21      Plaintiffs cite to *Pueblo of Sandia v. United States*, 50 F.3d 856 (10th Cir. 1995),

22  presumably to support their position that the Caltrans Defendants failed to comply with Section

23  106. In that case, the court found that the Forest Service failed to follow up on information from

24  the plaintiffs, even though it knew the plaintiff tribes might be "hesitant to divulge the type of

25  information" it was seeking about the traditional cultural properties at issue. *Id.* at 860-61. The

26  court also found the Forest Service did not act in good faith, because it had withheld information

27

28  ---
    [17]    Again, the Plaintiffs have not directed the Court to a request from Round Valley to the
    Caltrans Defendant regarding consultation.

from the SHPO that, once disclosed, caused the SHPO to withdraw its initial concurrence in the Forest Service's determination that there was no evidence that traditional cultural properties were located in the relevant area. *Id.* at 858, 862-63. Although there were issues relating to CA-MEN-3571, Plaintiffs have not pointed the Court to similar behavior by the Caltrans Defendants. Plaintiffs also do not identify any new information they would have provided to the Caltrans Defendants if they had been consulted earlier in the construction process.

Accordingly, the Court concludes the record shows the Caltrans Defendants gave Plaintiffs the reasonable opportunity to address their concerns about the post-review discoveries and worked with them in an effort to resolve those concerns. The Court denies Plaintiffs' motion and grants the Caltrans Defendants' cross-motion on this issue.

b.     **Programmatic or Memorandum of Agreement with Plaintiffs.**

Plaintiffs also argue that the Caltrans Defendants violated Section 106 by not entering into a memorandum of agreement with them. Plaintiffs cite no authority that Section 106 of the NHPA required the Caltrans Defendants to conclude and execute a project specific programmatic agreement with Plaintiffs, and they abandon this argument in their reply. Section 800.6 of NEPA's implementing regulations addresses the resolution of adverse effects and provides, in part, that an "agency official shall consult with the SHPO/THPO and other consulting parties, including Indian tribes and Native Hawaiian organizations, to develop and evaluate alternatives or modifications to the undertaking that could avoid, minimize, or mitigate adverse effects on historic properties." 36 C.F.R. § 800.6(a).

That regulation also contemplates that parties *may* execute a memorandum of agreement that would "evidence[] the agency official's compliance with section 106 and this part and shall govern the undertaking and all of its parts." *Id.* § 800.6(c). The agency official also "may invite an Indian tribe … that attaches religious and cultural significance to historic properties located off tribal lands to be a signatory to a memorandum of agreement concerning such properties." *Id.* § 800.6(c)(2)(ii). Nothing in that regulation requires the parties to reach an agreement on a memorandum of agreement.

The record shows the parties did make efforts to negotiate an agreement specific to the

23

Willits Bypass Project. However, when the parties failed to reach an agreement, the ACHP determined that the Caltrans Defendants should continue to follow the procedures set forth in the FAPA. (CT AR 014892). Based on the record the Court cannot find the decision not to finalize the agreement the parties were attempting to negotiate was neither arbitrary nor capricious. *See also Quechan Indian Tribe v. U.S. Dep't of Interior*, 547 F. Supp. 2d 1033, 1049 (D. Ariz. 2008) (finding that plaintiffs' invitation to sign a memorandum of agreement "is a matter of discretion" and finding that plaintiff failed to demonstrate that defendant's exercise of that discretion was arbitrary or capricious").

Accordingly, the Court denies, in part, Plaintiffs' motion for summary judgment, and it grants, in part, the Caltrans Defendants' motion.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' motion for summary judgment, and it GRANTS, IN PART, AND DENIES, IN PART, the Caltrans Defendants' cross-motion for summary judgment. The Court shall enter a final judgment as to all Defendants, and the Clerk shall close this file.

IT IS SO ORDERED.

Dated: March 30, 2018

_____
JEFFREY S. WHITE
United States District Judge